And the case number is 22-13778. And Mr. Mosley, when you are ready, you will have 13 minutes. I see that you've saved two for rebuttal. May it please the Court, my name is Drew Mosley. I represent the appellant plaintiff, James Howell, Jr. Your Honors, this is a case under Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794, Title III of the ADA, 42 U.S.C. Section 12192 in Georgia tort law. With my time, I'd like to explain a few errors made by the lower court. The standard of review for these errors is de novo, and the Court accepts the allegations in the complaint and its exhibits as true and in alignment favorable to Howell. For the first error, after initial ruling Howell had sufficiently pled failure to accommodate claims under Section 504 and Title III, the lower court erred in later dismissing them as moot, ruling Howell's requested relief of restarting medical school afresh was improper under Section 504 and ADA, and Howell lacked standing. Howell asked the Court to reverse. The lower court relied on a single, unpublished, and unsighted decision in the same district,  This decision offered no authorities or reasoning in support of its conclusion. There appears to be no controlling authority ruling a grade expungement or the opportunity for a fresh start are never appropriate relief, much less whereas here, Howell pleads his academic performance suffered because Morehouse failed to provide a reasonable and granted accommodation. Let me drill down on that. So looking at his first year grades, let me just tell you where I'm struggling with your case. In his first year, he got an A, two B's, two C's, he did get a D, he was allowed to take a make-up, and I think scored an 88, which, because of the rules of the school, gave him a C. So all passing and some good grades. The second year, two B's, a C, and a pass, and those were the two years where there were some, I guess, some untimeliness in getting him the notes. And then in his third year, when all of the problems on the timeliness of the note-taking accommodation have been resolved, he fails. And so he now wants to restart medical school, and the school has said, we'll let you back in and we'll let you make up these two classes that you failed, but we're not going to have you restart medical school. He argues that there's, he's missing the foundation from those first two years, but I'm looking at these and these are fine grades. I'm struggling to understand this global remedy that he seems to be seeking and that does seem to have given pause to the district court. What has happened in the first year is Mr. Howell has, he's not received the note-taking accommodation as granted, and he is adapting in ways that are detrimental to his ultimate success, his knowledge in the third year, being able to deal with abnormal human physiology after learning normal human physiology. When you don't have the basics, I mean, you have to resort to sort of glue mastery of the material. It's very different. How do you, I guess this is why I'm still struggling. We've got professors who are giving him fairly decent grades, including an A and four Bs, and the professors have said this is enough to advance to the next year. Why are we as a court in a position to say the professors are getting it wrong? You don't have enough of a foundation. You get to restart medical school. Well, ultimately, he did not have the foundation. He did fail in his third year, and he also, he failed the class first year, which was organ systems three. But then he retook it and got an 88, and then the grade that he was assessed, because of the rules, the way that goes, if you fail, you can only have a minimum passing. So he was given a C. But what's happening, and I think that this is very well captured in the Redding case, the court there said, implicit in Nova's argument is that meaningful participation is mere advancement to the next academic year. Participation in an academic program cannot be defined so narrowly. Academic achievement is measured by more than pass-fail. Nova's argument deems delay advancement equal to advancement and the value of a C plus average equal to an A average. Meaningful participation and access to an academic program includes the opportunity to advance in the next academic year on the regular schedule and to achieve one's academic potential on a level playing field with one's peers. When a qualified student's disability prevents such meaningful participation, a reasonable accommodation cannot be called unnecessary. But you're pointing to the third year and his failure as evidence of his point. But in an exhibit to the amended complaint, he references that in his third year, he has now turned his time to, instead of medical school, combing through two plus years of e-mails, compiling and conducting analytics with regard to my note-taking accommodation for those two years. So rather than studying, he has now decided to pursue legal remedies. So I'm not sure how failing two classes his third year proves your point. Well, he had alerted Marla Thompson and Nogza Anachebe. He had alerted them in February of the third year that I'm failing. I've got these gaps in my knowledge. I know I'm failing. It wasn't that if he had gone to class, he could have salvaged that year. He realizes the situation that he's in, that he's tried, he's done everything in good faith that he can to try and avoid trying to seek a legal remedy rather than just making it through. But Appellant submits to the court that he has a right not just to get by, but to reach his highest level of achievement that he could, maybe even get an honor if he could. This is not an IDEA case, is it? I mean, what you're describing is a different standard than a reasonable accommodation. It is not an IDEA case. Right. So, I mean, I'm not sure that he has the right to, you know, the same standards of helping him reach his absolute highest potential. He had a right to get notes. And then the year that he got the notes timely is when he began to fail. So I, too, am having trouble seeing why this problem in the first two years where, for better or for worse, he got really good grades. Not really good, but he got very acceptable grades, which is, I mean, somewhat concerning if you can get those kinds of grades and then be that, if his argument is you can get those kinds of grades and then be that fundamentally ill-prepared to deal with a third year of medical school. That seems to be a different question than whether the note-taking is a problem. Well, he had a right to be accommodated, and he was granted the accommodation. And, but he ultimately did not receive that accommodation that he needed so badly, these written notes to address his particular disability. He did. He did receive them. They were not timely. And I would also note that he's entitled not to the accommodation of his choice, but to a reasonable accommodation. And in the first and second year, he was given not only the designated note-taker in class, which I think Morehouse would concede there was a timeliness issue, but he was also given the three other accommodations, a private and or distraction-reduced testing room, audiotaped lectures, and double time for exams and in-class assignments. Those are the first two years. Then we move into the third year, where the note-taking timeliness concern has been resolved, and he's given six other accommodations, including the ones I just read, and additionally, videotaped lectures, breaks for exams and in-class assignments, and preferential seating in class. I get that he has a gripe with the timeliness of the note-taking accommodation again, but he's only entitled to reasonable accommodations. How are all of these accommodations not reasonable? Well, at time of matriculation at the school, Morehouse had agreed that his requested accommodations were reasonable and they were going to grant him. And I would add that it's not just a timeliness issue. During Howe's first year, he was provided notes for only 61% of his classes. 61%. And notes received had a 4.17 day average turnaround time, and that's, you know, that's more than double the 48 hours, which was the high end of what the goal was. And the goal, let's keep that in mind, that Morehouse said, so I think it's very important too to reiterate what this note-taking accommodation is. It relies on a fellow student to take notes during class and then provide them to the school administrator. And so you're relying on that student. And so Morehouse said, our goal is a 24 to 48 hour turnaround. They didn't meet the goal, but it was just that, a goal. Not a promise, not a contract. Well, it was a goal, but in the second year, it was flouted even more. While 88% of notes were received during the second year, that was a 14.61 day average turnaround time. And the notes are, it'd be valuable to have them the same day. Obviously, the goal was not really contemplating that would be always possible. But 48 hours and 14 days are so far apart. And that's in the second year. It's not the case that these, I mean, for instance, some of the other accommodations, they are audio things that any of the students would have had available and weren't really true accommodations in that sense. And then in the third year... Howard, I'm sorry, he's been given a lot of other accommodations and you are now just dismissing those as they're not accommodations in the truest sense? With regard to the ones that were available to each, to all students, I believe that the case law is that there is, that that's not a true accommodation if it's available to everyone. So it could be on the list, but not really be a true accommodation. So if this, say he asked for a note taking accommodation and he was getting them all the notes back in 24 hours and the school decided to create a note bank, which we actually know exists, and they dumped all of those notes in the library for all students, that would cease to be an accommodation? As it may. Here, there were a note bank, there was a note bank that existed, but for much of this time, for most of the two years, Mr. Howell did not know about it and it would have... Well, that's not the point that I'm making. I'm simply making the point that let's just pretend he gets notes within 24 hours and then the school decides to deposit those in the existing note bank. You're saying that would no longer be an accommodation? Well, if everyone was getting it, it might not be. Counsel, isn't the answer that it would be indication that there was no need for an accommodation on that aspect? I mean, you don't have to say it's either accommodation or you lose. I think that's a good way to describe it. And in the facts of the case, though, it was a random accommodation and it wasn't even one that had been in place prior. It seems to have been a first instance for the school. But even in your own analytics, you said in the first year, he got 60 some odd percent of the notes and in the second year, it went up to 80 some percent. So, and then the problem was resolved by third year. So, Morehouse is resolving this issue and working to get better on this. Well, I mean, too little too late for Mr. Howell and his... Who's getting A's and B's and C's his first year and... In a working all day, exhausted, unsustainable manner, which was doomed to fail, yes. Thank you. You have reserved two minutes for rebuttal. Ms. Davis-Primer, you may proceed when you are ready. Good morning, Your Honors, and may it please the Court. I am Nakim Lee Davis-Primer, counsel on behalf of Morehouse School of Medicine, and I'll refer to it as MSM. Your Honor, in this case, you are correct that Howell is attempting to shift the focus away from his own disengagement during his third year to now blame MSM for his failures during his third year in two of his courses. The facts, as alleged in the amended complaint, demonstrate that Howell stopped attending classes, stopped studying, and did not take exams during his third year courses. And that is what ultimately led to his failures of those courses. The District Court properly determined in this case that the failure to accommodate claims should be dismissed with prejudice. As the Court has identified previously, there is a different question here of whether the note-taking accommodation was satisfactorily provided to Howell versus the goal in terms of the 24 to 48-hour indication that he's relying on. There's no allegation in this case that there was a deficiency with the notes themselves, that he couldn't follow the notes, or they were otherwise impacting his ability to study for his exams. As to the first year, are you focusing only on the third of the first year as well? All of it? All of it. He's never alleged to have- Say 38 days after the class is a deficiency. 38 days after class and getting the notes, that's a timing issue. And timing doesn't matter. Timing's everything. Timing matters, but he was also receiving other accommodations. He had the audio transcription. But if notes were a necessary accommodation, and the assumption all along seems to be they were, and I can't imagine why they weren't if he couldn't focus on what he was hearing and make his own notes, then you've got to get them to him faster than 38 days. Yes, Your Honor, the notes were necessary, and there is an allegation by him in this case that the notes were necessary, and we'll just assume for purpose of this discussion that they were. And I say that because he was, to the Your Honors, to Judge Branch's comments earlier, he was able to complete his courses with satisfactory grades. And the U.S. Supreme Court has held that we should exude deference to the academic institution's judgments on whether or not he has the foundational knowledge base. But they may not have been as satisfactory as he could have achieved them had he had a reasonable accommodation. Let me ask you this. I see you, and I say, what the hey, you know, he made pretty good grades, flunked a couple cases, still could have graduated. But I don't know, and I don't want to know about your college choice and law school choice, but if you were in college and you wanted to get in a particular law school and it was competitive, would you care whether you were the 51st percentile or the 91st percentile in undergraduate school? If it was necessary for the law school? No, if it determined what law school you got in. Well, that may be a personal consideration, but that doesn't... Why is that personal? Why is that personal as opposed to educational achievement and career and so forth? Because not every individual may seek to attend the most prestigious schools in order to... But every individual, I would hope, I know human nature is subject to great variance, but I would hope everybody wanted to do as well as they can do. Wouldn't you? You would. Yes, Your Honor, but in this case, it's a failure to accommodate claim. And the question is whether or not considering all the accommodations... So your position is, as long as they get him over the finish line, if he's in the middle of his class or the bottom third of the class, then that's fine. No, Your Honor, the position is that the law has certain expectations on what is a reasonable accommodation. And in this case, you consider all the accommodations in total... I thought one of the arguments in your brief was, what the hay? He passed most of his courses. He could have graduated if he'd just gone back, applied on the ones we let him retake. And his argument to that, which seems reasonable to me, was, look, that would have affected, for example, the residency programs I could get. And it would follow me the rest of my career. Your Honor, all those statements are conclusory statements. We can't speculate to what other... Common sense, counsel. I mean, if you're a hospital and you take pride in the fact that most of your patients you don't do harm to, you're going to hire somebody who did better in med school than somebody who barely got by, aren't you? I think that's making an assumption, because that would be assuming that every doctor in every hospital made the highest grade... No, it wouldn't. No, it wouldn't. All it assumes, counsel, is that hospitals want to hire people who are as qualified as they can be for the residency programs, the input of young doctors. And the way they do it is look at the medical school achievements, recommendations, grades. And yes, Your Honor, in those medical school achievements, recommendation, and promotion decisions are made by the professors and faculties within those institutions. Here, the professors and faculties at MSM determined that Howell has satisfactorily mastered the material to be promoted to the next level. The U.S. Supreme Court says that we show deference to those decisions, that he could be promoted to his third-year courses and complete them. We have on the record before us evidence that we have an individual who disengaged so that he could pursue legal recourse against the institution. That is your strongest argument, and that's not the one I'm asking you about. I'm asking you, as I often do, about your weakest argument. And one is, what the hay, it didn't matter much anyway. He could have gotten through med school. I don't find that argument very appealing or persuasive. Well, Your Honor, we're not saying what the hay. We're saying here are the standards that we're obligated to follow under Section 504 in Title III. All we got to do is accommodate him enough that he graduates, however barely it is. No, we have to provide reasonable accommodations. And our argument is that when you're looking at the accommodations that he received, they were reasonable. That's our argument. Not what the hay, but they were reasonable. And yours seemed extensive, frankly. There was a problem with the notes, but the list of accommodations that Judge Branch read, those were all offered and there was no complaint about those. Am I correct on that? That's correct, Your Honor. I was a little bit surprised at all those accommodations. I have no argument. I've not analyzed it, but those seemed very extensive to me. And in addition, in the record, it demonstrates that Howell also received written materials for certain classes. He had the audio transcripts. He had textbooks. These are all items at his disposal to use. In this case, Howell is trying to piggyback off of what he claims were past discriminations, past acts of discrimination during his first and second year courses to be a rewarded injunctive relief. And that's not the purposes of injunctive relief. In Race vs. Occupational Safety and Health Review Commission, that citation is 102F3R1200. In that case, this court is the 1997 opinion held, injunctions look forward in time and regulate future conduct. They do not provide relief for past injuries already incurred. Howell's attempt here in this case to completely restart his MD program and have a completely erased record is for past alleged acts of discrimination, which is outside the bounds of what injunctive relief is meant to remedy. That is much more like what we see, as I was saying, in an IDEA case, isn't it? Where if a child is denied certain accommodations during their more formative years, then under IDEA, the school has an obligation to make up for what they lost. But there's no such demand in this context, is there? Yes, Your Honor. In Houston vs. Merit Supermarket, seeing that 733F1323, this court is the 2013 opinion, said Title III seeks to remedy present acts of discrimination to ensure disabled individuals are provided full and equal enjoyment of places of public accommodations in the future. So here, Title III only allows injunctive relief. What they're requesting is not injunctive relief because it seeks to This is not a case where we're enjoining MSM to stop ongoing discrimination or to prevent it from continuously discriminating against him in violation of Section 504. So he probably could have, if he thought it was a problem at the time, he could have raised a claim then, right? Yes, Your Honor. And that goes to one of our continuing violations document arguments. We believe that in this case, that a lot of his claims are time barred because every time he didn't receive notes, he could have filed a suit right then for failure to accommodate. It did not require waiting until he claims to have been harmed to then file a failure to accommodate claim against him. That's true of the sex discrimination claims where we've held our continuous violation. Those are harassment claims. No, no, no, no, no, no. I'm talking about somebody doesn't get a promotion and it affects them throughout their years. Your Honor, failure to promote is a discreet act. And you know that you didn't get a promotion. That's not a continuing violation. It can be if the promotion is along the career path we've held. In other words, you go to step one, then you go to step two, then you go to step three. That wasn't true until the Lilly Ledbetter Act is my understanding. Yep. That required a statutory amendment. Right, Your Honor. And that's not what is at issue here in this case. And I would also like to cite that one of the issues that Howell raises as alleged ongoing harm kind of relates to what Judge Carnes mentioned is that this gray remaining on his transcript is some sort of ongoing irreparable harm. We believe that that is inappropriate and that is not supported. In O'Shea v. Littleton, that citation is 414 U.S. 488. The U.S. Supreme Court explained that past exposure to illegal conduct does not in itself show a present case of controversy. So that tends towards what the district court decided. But in Nicol v. Attorney General of Georgia, that Statute 69F Appendix 813, that's an 11th Circuit 2019 case. In that case, this court explained, in the brief cites to the Shepard opinion that the district court refused to use as persuasive authority. And in Shepard, the court determined whether or not Ex parte Young would allow a gray remaining on the transcript to constitute continuing harm. The district court here rejected that opinion. And we believe it's proper because of the Nicol opinion I just cited too. In Nicol, this court explained that Ex parte Young does not apply when a plaintiff seeks to adjudicate the legality of past conduct. In that case, the plaintiff argued that maintenance of a B on their transcript was an ongoing harm. And this court said that is not the ongoing harm that's required to satisfy Ex parte Young. And we would submit that by extension, in this case, his allegations about having these grays on his transcript is not an ongoing harm that would support finding injunctive relief appropriate against MSM. I understood that you had offered to let him retake the two courses. He failed. Is that correct? Was that offer at no cost tuition and fees? Or would he have to pay for them? Or did it say? It did not say. There was no discussion of tuition and fees in that decision. He was, as I understand it, $200,000 in the hole already? That's what he alleges in the complaint. So, Your Honor, our position is that the district court did not err in dismissing any of Howell's claims in this case. The district court issued an 86-page opinion that went through all of the allegations in this case to determine that the relief Howell requested is not proper under Section 504 in Title III. And we believe that decision should be affirmed for the reasons stated here today. We also submit to this court that MSM, that the district court did conduct a review, an equitable analysis here to decide that the relief that most directly relates to the harm that Howell requests, alleges he suffered in this case, was already granted to him in the to have failed due to the issues that he alleges in this case. Let me just ask you a quick question. So, his third year was the 2019 to 2020 school year. I'm working under the assumption he has not been back to medical school since then. And we're in 2024 now, right? That's correct, Your Honor. Mr. Howell rejected the offers to re-enter into the medical, the doctor of medicine program at MSM. And he has continuously failed to re-enter. So, our position as we cite in our brief is that he's failing to mitigate his very own damages and is instead exacerbating them. If he claimed then that he could not complete the courses because of foundational knowledge gaps, now he just wholly failed to return in order to satisfy, to address those alleged concerns despite MSM's attempts to accommodate him. So, Your Honor, again, we believe that the district court should be affirmed in all of its decisions in this case. And unless the court has any questions about any of the other arguments in the brief, I'll tend to the remainder of my time. Thank you. Thank you. Mr. Mosley, you have two minutes. Thank you, Judge. First, on remediation, on the remediation exam first year, Mr. Howell got 88 points for a grade of 70 percent, not 88 percent. So, it was as low as it could possibly be and passed. I think that's what I said. Because of the rules of the school, that means you only get passing. But he did show some proficiency in getting the 88. I understand it counted as a 70. Okay. And that's 24-4, page 4. And the note-taking accommodation was the only accommodation that his lecture's oral information became available in a written format. So, it was distinct, unique, and important. Proposing counsel mentioned the audio, that there was an audio transcript. Is it an audio or an audio transcript? Audio recording, not transcript. Mr. Howell had to make transcripts of his own. It was an extremely taxing process. The third year's success was predicated on properly learning normal human physiology in the first two years. As discussed on ECF, page number 27 of Appellant's reply brief. Further, accommodations effectiveness is a fact of intensive inquiry that often presents questions of fact precluding summary judgment. And that's Silva v. Baptist Health of South Florida, Inc., 856F3824836, 11th Circuit, 2017. And Howell's claims have not entered discovery. What about the point that your friend on the other side made about injunctive relief in this context dealing with forward-looking problems and not making up for backward-looking problems? Mr. Howell is permanently dismissed. He seeks the relief of being put back in school and also the additional relief. He was offered the chance to take those classes and take those exams again, and he turned it down. Well, the terms were not equitable to him. They would not have solved the problem. They would have put him back in a prejudicial place in which he began. And there is no authority that being offered partial relief means you have to, that you can't seek the relief that you've initially sought in your complaint. He's seeking to start over, right? He seeks that because he, it's the only way to correct. Whatever reason, that's what he's seeking, with or without tuition and fees. Well, he's seeking to have relief from the tuition and fees as well. But the court is not, the court could grant him part of what he wants and he'd be happier than if the court granted him none of it. It's not an all or nothing thing. The court can grant different parts of. Unless you're looking at another $200,000 in debt. So it did limit his options. Oh, who knows? That may be forgiven soon. That's not a question I'm asking. All right. Thank you. We have your case under advisement. And court is in recess until tomorrow morning.